**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTOPHER B. McZORN**,

                                        **Plaintiff,**

**-against-**                                                    **3:06-CV-0033**

**ENDICOTT POLICE DEPARTMENT;[1] arresting officer**
**detective SCOTT A. EVANS;  arresting officer**
**detective sergeant  MICHAEL A. KAMINSKY;**
**and reporting officer J. L. VANEK,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

                                **DECISION & ORDER**

## I.    INTRODUCTION

Plaintiff commenced this action _pro se_ pursuant to 42 U.S.C. § 1983 "seek[ing]

damages for the false arrest and false imprisonment of plaintiff C.B. McZorn, and the

defamation of plaintiff['s] character."  Am. Compl. ¶ 1 [dkt. # 5].  Plaintiff alleges that his

rights under the "[F]ourteenth, [E]ighth, [F]irst and [F]ifth [A]mendments to the United

States Constitution" were violated.  Id.   Defendants have moved for summary judgment

pursuant to Fed. R. Civ. P. 56 seeking to dismiss the action.  Plaintiff has opposed the

motion.

_____

[1]The Village of Endicott Police Department was dismissed from this action by order of this Court
dated May 9, 2006.  See dkt. # 7.

1

## II.     STANDARD OF REVIEW

### a.     Summary Judgment Standard

The Court may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  "[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment." Viscusi v. Proctor & Gamble, 2007 WL 2071546, at * 9 (E.D.N.Y. July 16, 2007).

In determining whether to grant summary judgment, the Court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, --- U.S. ----, 127 S. Ct. 1769, 1776, 167 L. Ed.2d 686

2

(2007).  "When opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment."

Id. at 1776.

The nonmoving party cannot defeat summary judgment by "simply show[ing] that

there is some metaphysical doubt as to the material facts," Matsushita., 475 U.S. at 586,

or by a factual argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d

979, 982 (2d Cir. 1991).  In this regard, a party opposing a properly supported motion for

summary judgment may not rest upon "mere allegations or denials" asserted in the

pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on

conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105,

114 (2d Cir. 1998).

### b.    Local Rules Requirements

_____The Local Rules of the Northern District require a party moving for summary

judgment to submit a "Statement of Material Facts" which

> shall set forth, in numbered paragraphs, each material fact about which the
> moving party contends there exists no genuine issue. Each fact listed shall
> set forth a specific citation to the record where the fact is established. The
> record for purposes of the Statement of Material Facts includes the
> pleadings, depositions, answers to interrogatories, admissions and affidavits.
> It does not, however, include attorney's affidavits.

N.D.N.Y.L.R. 7.1(a)(3).  Once a properly supported Local Rule 7.1(a)(3) Statement is

submitted, the party opposing the motion must

> file a response to the [movant's] Statement of Material Facts. The non-
> movant's response shall mirror the movant's Statement of Material Facts by
> admitting and/or denying each of the movant's assertions in matching

3

numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Id. (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts); Meaney v. CHS Acquisition Corp., 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth no citations – specific or otherwise – to the record")(emphasis in original); McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); Osier v. Broome County, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

While the Court must construe a pro se litigant's pleadings and papers liberally and

4

interpret them to raise the strongest arguments that they suggest, Govan v. Campbell, 289

F. Supp.2d 289, 295 (N.D.N.Y. 2003);[2] Veloz v. New York, 339 F. Supp.2d 505, 513

(S.D.N.Y.  2004), the application of this lenient standard does not relieve a *pro se* litigant

of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3).  Govan, 289

F. Supp.2d at 295; see also Faretta v. California, 95 S. Ct. 2525, 2541 n. 46 (1975)("The

right of self-representation is not a license . . . not to comply with relevant rules of

procedural and substantive law."); Edwards v. INS, 59 F.3d 5, 8 (2nd Cir. 1995)("While a

*pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are

required to inform themselves regarding procedural rules and to comply with them.").

## III.    BACKGROUND[3]

On August 25, 2004, Endicott Police Officer J. L. Vanek was dispatched to the

scene of a reported sexual assault at 200 North Street, Apt. 9, Endicott, New York.  On

arrival, Officer Vanek interviewed a number of individuals present at the residence

including the putative victim.  The putative victim advised that she had been asleep on a

couch in the apartment and that a person named "Chris" had also been asleep on the

couch with his head on the opposite end of the couch.  She stated that she awoke to non-

---

[2] To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." Govan, 289 F. Supp.2d at 295.

[3] With their motion, Defendants served Plaintiff with a Statement of Material Facts pursuant to N.D.N.Y. Local Rule 7.1(a)(3) ("L. R. 7.1 Statement") and a Notification of the Consequence of Failing to Respond to a Summary Judgment Motion ("Critical Notice").  Dkt. #s 25 & 26.  The Critical Notice advised Plaintiff, *inter alia,* that he had to file a statement of material facts containing what he contends to be the genuine factual issues in dispute. Id. Dkt. # 25-1.  Plaintiff did not file a statement of material facts.  He did file an affidavit in opposition to the motion that, to a limited degree, is based upon personal knowledge or cites to Defendants' record.  Given Plaintiff's *pro se* status, the Court will allow some latitude.  Accordingly, the Court accepts as true the properly supported facts set forth in Defendants' L. R. 7.1 Stat. that are not directly contradicted in Plaintiff's papers and supported by admissible evidence. N.D.N.Y.L.R. 7.1(a)(3)**.** Unless indicated otherwise, the facts set forth above are taken from Defendants' L.R. 7.1 Statement or admissible evidence submitted on this motion.

consensual vaginal penetration by Chris, and she screamed and jumped up off the couch. According to the putative victim and other witnesses who were present in the apartment at the time, Chris jumped up off the couch, left the apartment, and drove away in his vehicle. An occupant of the apartment advised Officer Vanek that Chris was known to her only by first name, and she provided the police with Chris's physical description and his telephone number.  Officer Vanek caused dispatch to run the telephone number through their computers, and the inquiry returned with Plaintiff's name and his address in Endicott, New York.

Officer Vanek communicated the substance of his initial investigation to Detective Scott A. Evans who, according to Defendants, put into motion a plan of action for the investigation of what was believed to be a rape.  The putative victim was transported to the hospital for administration of a rape kit and DNA analysis.  She also gave a sworn statement that indicated, *inter alia*, that she had taken two (2) vicadin pills about an hour and a half before she was awakened by Chris.  The putative victim further asserted in her statement: "All I remember was waking up and my pants were down to my thighs and my underwear were [*sic*] down to my butt, past my butt, and he was pumping his penis inside my vagina from behind me."

Upon learning of Plaintiff's address, police officers went to and remained outside Plaintiff's residence while awaiting a search warrant.  Before the warrant arrived, Plaintiff voluntary exited his residence, hands in the air, and agreed to be transported to the Endicott Police Department for questioning.

Plaintiff contends that as he was walking to the interrogation room at the Endicott Police Department with Detective Sergeant Michael A. Kaminsky, he told Kaminsky "that

6

drugs were involved." Plf. Aff. ¶ 10.  According to Plaintiff, Detective Kaminsky responded:

"We don't want to hear or know about it."  Id.  Plaintiff claims that he then said he "pleads

the 5th and want[s] a lawyer."  Id.  Detective Kaminsky then responded: "It would take all

day for a lawyer.  If you don't give a statement I will arrest you.  If you cooperate I[']ll let

you go."  Id.  Plaintiff was then lead to the interrogation room for questioning.

    A video of the entirety of the questioning was made, and a copy of video was

provided to the Court on this motion.  At the start of the video, Plaintiff is seen sitting alone

in an office next to a desk.  He is not handcuffed or shackled and appears to be spitting on

his fingers and cleaning his shoes with his fingers.  Then, Detective Kaminsky can be

seen entering the office and sitting at the desk and addressing Plaintiff.  Plaintiff asks

Detective Kaminsky a question (which is inaudible) that results in the following exchange:

> Kaminsky:    Well, to be honest with you, we probably have enough to
> charge you, but there are always 2 sides to a story, so.
>
> Plaintiff:    Should I wait 'till a lawyer gets here, or?
>
> Kaminsky:    Well, I'll go through your rights with you, and you tell me what you
> want to do.  I can't make that decision for you.
>
> Plaintiff:    Right.

Detective Kaminsky then advises Plaintiff that he is being investigated for a charge

of rape, and begins reading Plaintiff the standard Miranda warnings.  After each particular

warning, Detective Kaminsky asks Plaintiff if he understands the warning, to which Plaintiff

answers in the affirmative each time.

    After reading the warnings and confirming that Plaintiff understands them, the

following discussion can be heard:

> Kaminsky:    Now that I have advised you of your rights, are you willing to answer

my questions at this time without first talking to a lawyer and having
your lawyer present during the questioning?

Plaintiff:     How long would it take for a lawyer?

Kaminsky:   Well, that all depends on who we get a hold of.

[slight pause in the conversation]

Kaminsky:   It is up to you.  I can't make that decision.  It's up to you.  If you want
to sit and talk, I am more than willing to sit and talk to you.

Plaintiff:     Yeah, I'm willing to talk but, um, anything I say might incriminate me
or something, I don't know.

Kaminsky:   I can't make that decision for you.

Plaintiff:     Yeah, I'll talk.  I didn't do anything anyway.  I ain't got nothing to hide.

At that point, Detective Kaminsky provides Plaintiff with a Miranda Warning sheet

which Plaintiff reviews and signs.  Detective Kaminsky then opens a laptop computer that

is on the desk, and begins asking Plaintiff pedigree information.  As Plaintiff answers the

questions, Detective Kaminsky can be seen typing the information on the computer's

keyboard.

Detective Kaminsky then advises Plaintiff that the police are investigating an

alleged rape that is reported to have occurred as 200 North Street in Endicott, and asks

Plaintiff about the incident. Plaintiff begins a narrative of the incident with Detective

Kaminsky typing into the computer and saying "OK" after each of Plaintiff's sentences.  It

is apparent that Detective Kaminsky is attempting to type Plaintiff's statement *verbatim* (or

close to *verbatim)*

Plaintiff states to Detective Kaminsky that he and the putative victim were both

sleeping on the couch in the apartment with their heads at opposite ends, and that the

8

putative victim asked him to turn around so that they were both laying with their heads at the same end.  Plaintiff then states, in substance, that the two began kissing and that the putative victim placed Plaintiff's hand on her breast and began rubbing her buttocks on Plaintiff's crotch.  Plaintiff contends that he unzipped the putative victim's pants and that her pants started to come down from the movement of her hips.  Plaintiff states: "She kept on moving her ass and really that was it.  I slipped in through her panties and she kind of freaked out."  Detective Kaminsky then confirms the statement "I slipped in through her panties and she kind of freaked out" by reading it to Plaintiff from the computer screen, to which Plaintiff replies: "Yeah."

After asking Plaintiff whether he had even met the putative victim before (to which he answers in the negative), the following discussion occurred:

Kaminsky:   When you say you slipped in through her panties, are you talking about your penis entering her vagina?

Plaintiff:     Yeah, but I don't think it entered.

Kaminsky:   But you are not talking about your hands or something else slipping in through her panties.

Plaintiff:     No.

After asking some additional questions about the incident and typing the answers into the computer, Detective Kaminsky prints the statement and hands it to Plaintiff.  Detective Kaminsky tells Plaintiff: "Chris, take your time and read that over.  When I come back let me know if there is anything you want changed."  Detective Kaminsky leaves the room and Plaintiff can be seen reading through the three (3) page statement.  After apparently finishing reviewing the statement, Plaintiff places the statement on the desk and sits in the chair looking around the room.  A few minutes later, Detective Kaminsky

9

reenters the room and asks Plaintiff: "How's that sound?  Anything you want to add or change in there?"  Plaintiff responds: "Not really."   Detective Kaminsky then points to the statement four times and says each time he points at it: "Answer that question, answer that question, read this, and then sign here."  All of the places that Detective Kaminsky points to are on the same page.  The copy of Plaintiff's statement provided to the Court contains two final questions with two hand-written responses,  a New York Penal Law § 210.45 Notice, and a signature line signed by Plaintiff.  It is clear that Detective Kaminsky was pointing at these items. Plaintiff can be seen writing on the page.  The two questions and handwritten answers on the signed statement are as follows:

> Q:    After having reviewed this statement is there anything you wish to add or change?
>
> A:    Yes.  I know that my penis didn[']t enter her virgina [*sic*].
>
> Q:    Is this statement true and correct to the best of your knowledge and belief?
>
> A:    Yes.

After providing the statement to Detective Kaminsky, Detective Kaminsky asks Plaintiff some additional questions about the particulars of the incident and then requests that Plaintiff provide a DNA sample *via* a mouth swab.  Detective Kaminsky explains the procedure and gives Plaintiff a consent form which Plaintiff reviews and signs. Plaintiff then swabs the inside of his cheek with the swabbing apparatus and provides it to Detective Kaminsky.

After the mouth swab, Detective Kaminsky leaves the office again and returns with Detective Evans.  Evans asks Plaintiff numerous questions about the incident, and Plaintiff maintains that there was no vaginal penetration.  Detective Kaminsky suggests that

Plaintiff consent to a swab of his penis to determine if vaginal fluid is present.  After explaining the procedure and presenting Plaintiff with a "Consent to Search" form, Plaintiff agrees to the procedure and signs the form.  Plaintiff and the two officers can be seen leaving the office, presumably to have the second swab performed.  The video continues to show an empty office.   Several minutes later Plaintiff returns to the office, and, shortly after that, Detectives Kaminsky and Evans return.  Detective Kaminsky tells Plaintiff that the results of the swabs and tests run on the putative victim will not be available for some time, but that they have "enough evidence" for "probable cause" to believe the putative victim's account and, therefore, they "have to" formally arrest and charge Plaintiff. Detective Kaminsky tells Plaintiff that they will book him and get him before a judge so he can "get out of here."

A felony complaint was sworn out by Detective Evans on August 25, 2004 charging Plaintiff with Rape in the First Degree in violation of New York Penal Law § 130.35(2) for engaging in sexual intercourse with a person who was incapable of consent because she was asleep.  The matter was turned over to the Broome County District Attorney's Office for further handling.  Although unclear from the documents presented, it appears that charges against Plaintiff arising out of the August 25, 2004 incident were presented to two grand juries and, ultimately, resolved without a conviction.  See Attachments to the Am. Compl.

## IV.    DISCUSSION

### a.    False Arrest

Plaintiff asserts that he is seeking damages under Section 1983 for his "false arrest and false imprisonment."  Am. Compl. ¶ 1.  Although not cited in the Amended Complaint,

11

Plaintiff cites the Fourth Amendment in his Memorandum of Law in Opposition to the pending motion as the basis for this claim.  See Plt. Mem. L. pp. 2, 8.  The Court will address the claim accordingly.

The first step in any Section 1983 claim predicated on the Fourth Amendment is to determine if and when a constitutionally cognizable seizure occurred.  Medeiros v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998).  A Fourth Amendment seizure occurs whenever an individual is physically or constructively detained by a police officer in such a manner that a reasonable person would not feel he is free to leave.  County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998);  Tennessee v. Garner, 471 U.S. 1 (1985); Terry v. Ohio, 392 U.S. 1 (1968).  Because Plaintiff voluntarily accompanied the police to the station for questioning, and because there is no evidence or allegation that Plaintiff's freedom was curtailed before he was told he was going to be booked for the rape charge, the Court addresses the false arrest claim from that point.

Defendants assert that, after interviewing the witnesses, including the putative victim, "the officers were possessed of information . . .  which provided them with probable cause to believe that the crime of rape had been committed by the plaintiff."  Reply Mem. L. , p. 1.  A Fourth Amendment false arrest claim fails as a matter of law if, at the time of the seizure, the arresting officer had probable cause to make an arrest.  Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003); Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004)(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  Probable cause exists when officers "have knowledge or reasonably trustworthy

12

information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrested has committed or is

committing a crime."  Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir.

1999).  The relevant inquiry is whether "probable cause existed to arrest a defendant" and

"it is not relevant whether probable cause existed with respect to each individual charge,

or, indeed, any charge actually invoked by the arresting officer at the time of arrest."

Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  "A probable cause determination does

not require proof beyond a reasonable doubt; it is the mere probability of criminal activity,

based on the totality of the circumstances, that satisfies the Fourth Amendment." Hahn v.

County of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), aff'd, 52 F.3d 310 (2d Cir. 1995).

"[T]he eventual disposition of the criminal charges is irrelevant to the probable cause

determination." Hahn, 820 F. Supp. at 55 (citing Pierson v. Ray, 386 U.S. 547, 555

(1967)).

     "It is well-established that a law enforcement official has probable cause to arrest if

he received his information from some person, normally the putative victim or eyewitness."

Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (quoting Miroslavsky v. AES Eng'g

Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y.1992), aff'd 993 F.2d 1534 (2d Cir. 1993)).  "If

policemen arrest a person on the basis of a private citizen's complaint that if true would

justify the arrest, and they reasonably believe it is true, they cannot be held liable . . .

merely because it later turns out that the complaint was unfounded." Lee v. Sandberg, 136

F.3d 94, 103 (2d Cir. 1997); see Calderola v. Calabrese, 298 F.3d 156, 165 (2d Cir.

2002)("[W]hen an average citizen tenders information to the police, the police should be

permitted to assume that they are dealing with a credible person in the absence of special

circumstances suggesting that might not be the case.").  Police officers may also rely upon information gained from other officers in making their probable cause assessment.  See Savino v. City of N.Y., 331 F.3d 63, 74 (2d Cir. 2003).  Once a police officer has probable cause, he need not explore "every theoretically plausible claim of innocence before making an arrest." Ricciuti v. New York City Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997); see Hotaling v. LaPlante, 67 F. Supp. 2d 517, 522 (N.D.N.Y. 2001)(valid probable cause to arrest rested upon information supplied by an identified witness, and even though a further investigation by the Trooper would have led to a contradictory conclusion, Trooper's conduct was not unreasonable under the circumstances).

Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the Court as a matter of law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events is sufficient to establish probable cause to arrest. Mistretta v. Prokesch, 5 F. Supp.2d 128, 133 (E.D.N.Y. 1998).

From the facts gained by the police from the putative victim's statement, the police had probable cause to arrest Plaintiff even before his questioning.  Further, although Plaintiff did not confirm all of the putative victim's allegations, he did corroborate much of what the putative victim alleged.  Thus, even assuming that there were discrepancies in the various statements and no physical evidence presented on August 25, 2004 of the alleged rape (as Plaintiff contends), Defendants were presented with reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution in the belief that Plaintiff committed a rape or some other sexual assault.  Accordingly, Plaintiff's claim sounding in false arrest or false imprisonment is

14

**dismissed.**

### b. Right to Counsel

Plaintiff next asserts that his Sixth Amendment right to counsel was violated when he requested an attorney on the way to the interrogation room but was told that it would take a day to find one and, if he wanted to wait, he would be arrested on the rape charge. Plt. Mem. L. p. 2. Such an allegation, even if true, does not form the basis of an actionable Sixth Amendment claim.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Texas v. Cobb, 532 U.S. 162, 167, 121 S. Ct. 1335, 149 L. Ed.2d 321 (2001). A defendant's Sixth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. 682, 688, 92 S. Ct. 1877, 32 L. Ed.2d 411 (1972). Under New York law, "a criminal proceeding, and the right to counsel, is initiated or commenced by the *filing of an accusatory instrument.*" Brown v. Martin, 2004 WL 1774328, at * 5 (W.D.N.Y. Aug. 6, 2004)(emphasis in original)(citing People v. Blake, 35 N.Y.2d 331, 339, 361 N. Y. S.2d 881, 320 N. E.2d 625 (1974); Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 349 (2d Cir. 1998)). "Since plaintiff had not been arrested or charged with any crime at the time of questioning, [his] Sixth Amendment right had yet to attach." Contes v. City of New York, 1999 WL 500140, at * 8 (S.D.N.Y. July 14, 1999) (citing Neighbour v. Covert, 68 F.3d 1508, 1511 (2d Cir.1995)). Thus, Plaintiff has no cognizable claim that his Sixth Amendment right to counsel was violated by Defendants, and any such claim is **dismissed**.

15

### c.   Coerced Incriminating Statement

Plaintiff also asserts that his Fifth Amendment right against compulsory self-incrimination, and his Fourteenth Amendment right to due process, were violated when he told Detective Kaminsky that he was "pleading the Fifth" on the way to the interrogation room yet Detective Kaminsky nonetheless continued with the questioning.

> The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V. "It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory;  and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."  Kastigar v. United States, 406 U.S. 441, 444-45, 92 S. Ct. 1653, 32 L. Ed.2d 212 (1972) (footnotes omitted).  In Kastigar, the Supreme Court declared that the Amendment's "sole concern is to afford protection against being forced to give testimony leading to the infliction of [criminal] penalties."  Id. at 453, 92 S. Ct. 1653 (internal quotation marks and citation omitted).   The Fifth Amendment's self-incrimination clause bars the government from using a compelled confession in any criminal case.

> The test for whether a statement was improperly obtained by coercion is "determined by the totality of the circumstances."  Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998).

Higazy v. Templeton, 505 F.3d 161, 170 (2d Cir. 2007).

> The due process question is whether the statements made by [Plaintiff] were voluntary. See Colorado v. Connelly, 479 U.S. 157, 164 (1986); see also United States v. Orlandez-Gamboa, 320 F.3d 328, 332 (2d Cir. 2003) ("A confession is admissible under the Constitution only if it is made voluntarily."). The term "voluntary" has a specialty meaning in this analysis; after all, much of the point of custodial interrogation is to obtain statements the suspect would not otherwise have chosen to make. The question is whether the statements were obtained so involuntarily as to render the process of conviction based upon those statements a "mere pretense." Brown v. Mississippi, 297 U.S. 278, 286 (1936). "'No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.'" Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (quoting Green v. Scully, 850 F.2d 894, 901 (2d Cir.1988)). Factors include "the characteristics of the accused, such as his experience,

16

> background, and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics." Id.

King v. City of New York, 2007 WL 959696, at * 12 (E.D.N.Y. March 30, 2007).

Assuming, *arguendo*, that Plaintiff's August 25, 2004 statements were used against him in a criminal proceeding, see Chavez v. Martinez, 538 U.S. 760, 766 (2003)(holding that a coerced confession cannot serve as the basis for a 42 U.S.C. § 1983 action when that confession was never used in a criminal case); Weaver v. Brenner, 40 F.3d 527, 536 (2d Cir. 1994)(use of a coerced confession before a grand jury is a violation of the self-incrimination clause), there is no evidence from which a reasonable fact finder could conclude that Plaintiff's statements were coerced.  As indicated by the undisputed evidence, Detective Kaminsky read Plaintiff his Miranda rights before Plaintiff gave his narrative statement and was questioned by police, and Plaintiff stated that he understood and waived those rights.  Detective Kaminsky's explanations of the rights, and his questions of whether Plaintiff desired to waive those rights, were done in a non-threatening manner.  Plaintiff was repeatedly advised that the decision to continue was "up to [him]."  There was no force or threat made to Plaintiff, and his responses evince an understanding of the ramifications of speaking to the police.  Indeed, in deciding whether to speak to the police without a lawyer, Plaintiff acknowledged that he might incriminate himself but maintained that he had done nothing wrong and had nothing to hide and, therefore, wanted to "talk."

Plaintiff's contention that the police put the words "I slipped into her panties" "into [his] mouth" appears to be the type that is "blatantly contradicted by the record" such that

"no reasonable jury could believe it." <u>Scott</u>, 127 S. Ct. at 1776.  As evidenced by the video,

Plaintiff made this statement in his narrative, and, after he made it, Detective Kaminsky

confirmed the statement with Plaintiff.  Furthermore, Detective Kaminsky then clarified the

statement by asking Plaintiff whether was referring to his penis, which Plaintiff confirmed.

After Plaintiff reviewed the written statement, he made no effort to change this contention

other than to qualify it by stating that he did not enter the putative victim's vagina.  Based

upon the undisputed facts, no reasonable fact finder could conclude that Plaintiff's

statements were coerced.

Further, while a police officer may not question a suspect once he invokes his right

to counsel, the remedy for a violation of this rule is suppression of the resulting statement

in ensuing criminal proceedings, not a cause of action for damages under Section 1983.

See <u>Chavez</u>, 538 U.S. at 770-772;[4]   <u>Deshawn E.</u>, 156 F.3d at 346 ("The remedy for a

---

[4]As the Court explained in <u>Chavez</u>:

In the Fifth Amendment context, we have created prophylactic rules designed to safeguard the core constitutional right protected by the Self-Incrimination Clause.  <u>See</u>, <u>e.g.</u>, [<u>Michigan v. Tucker</u>, 417 U.S. 433, 444 (1974)](describing the "procedural safeguards" required by <u>Miranda</u> as "not themselves rights protected by the Constitution but ... measures to insure that the right against compulsory self-incrimination was protected" to "provide practical reinforcement for the right"); [<u>Oregon v. Elstad</u>, 470 U.S. 298, 306 (1985)](stating that "[t]he <u>Miranda</u> exclusionary rule ... serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself"). . . .

Rules designed to safeguard a constitutional right, however, do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person.  As we explained, we have allowed the Fifth Amendment privilege to be asserted by witnesses in noncriminal cases in order to safeguard the core constitutional right defined by the Self-Incrimination Clause-the right not to be compelled in any criminal case to be a witness against oneself.  We have likewise established the <u>Miranda</u> exclusionary rule as a prophylactic measure to prevent violations of the right protected by the text of the Self-Incrimination Clause-the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning. . . . Accordingly, Chavez's failure to read <u>Miranda</u> warnings to Martinez did not violate Martinez's constitutional rights and cannot be grounds for a § 1983 action.  <u>See</u> <u>Connecticut v. Barrett</u>, 479 U.S. 523, 528, 107 S. Ct. 828, 93 L. Ed.2d 920 (1987)(<u>Miranda</u>'s warning requirement is "not itself required by the Fifth Amendmen[t] ... but is instead justified only by reference to its

violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements" and "not a § 1983 action.")(quoting <u>Neighbour v. Covert</u>,  68 F.3d 1508, 1510 (2d Cir. 1995) (<i>per curiam</i>), <u>cert. denied</u>,516 U.S. 1174, 116 S. Ct. 1267, 134 L. Ed.2d 214 (1996)).  Accordingly, Plaintiff's claims premised on the Fifth and Fourteenth Amendments for the use of his statements against him are **dismissed**.

### d.      Fourth Amendment Seizure

Plaintiff argues in his Memorandum of Law that his Fourth Amendment right to be free from unreasonable and unwarranted seizures was violated when he was coerced to sign consent forms for the swabs of his mouth and penis.  His conclusory allegations of coercion relative to signing these forms regard are belied by the record in which he is depicted voluntarily consenting to such procedures absent any threat or force by police. Plaintiff fails to present any evidence upon which a reasonable fact finder could conclude otherwise.  His claim in this regard is **dismissed.**

### e.      Presentation of False Evidence

Plaintiff also alleges that his due process rights were violated when the police presented false evidence of a witness's selection of him from a photo array.  In this regard, Detective Kaminsky took the statement from the woman who was at 200 North Street, Apt. 9, Endicott, New York and who knew "Chris" and gave the police "Chris's" physical description and telephone number.  While taking the statement, the woman selected

---

prophylactic purpose"); <u>Tucker</u>, <i>supra</i>, at 444, 94 S. Ct. 2357 (<u>Miranda</u>'s safeguards "were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected").

<u>Chavez</u>, 770-772.

19

Plaintiff from a photo array and Detective Kaminsky reported that the woman selected

photo "# 5" which was Chris McZorn.  However, sometime later and before the case was

presented to the grand jury the first time, Detective Kaminsky realized that his report had a

typographical error in it because the woman selected the photo of Chris McZorn "marked #

4."  See Kaminsky Suppl. Report, Attach to Am. Compl.   Detective  filed a supplemental

report correcting the error. Id.   Plaintiff argues: "How do we know [the witness] really didn't

pick 'Christopher McZorn' and 'Det. Sgt. Kaminsky' use[d] typographical error as an

excuse or cover up[?]."  Plt. Mem. L. p. 10.

Assuming *arguendo* that the witness picked the wrong person from the photo array

and Detective Kaminsky attempted to cover up this fact, Plaintiff cannot show proximate

cause between this action and any damage he may have suffered.  Indeed, shortly after

the incident at 200 North Street, Apt. 9, Endicott, New York, Plaintiff went to the police

station and confirmed that he was the "Chris" who was on the couch with the putative

victim.  He further stated that the two engaged in some sexual conduct, just not to the

extent alleged by the putative victim.  Consequently, nothing the witness stated to the

police (including her allegedly inaccurate selection of Plaintiff from the photo array) added

anything to the allegations against Plaintiff that the police did not already have from

another source.  Plaintiff's Section 1983 claim alleging the presentation of false evidence

is **dismissed** for lack of proximate cause.

### f.   Eighth Amendment

Plaintiff asserts, in wholly conclusory fashion, that his Eighth Amendment

protections against excessive bail and cruel and unusual punishment were violated by

Defendants.  See Plf. Mem. L. p. 3.  He provides no factual allegation upon which a fact

finder could conclude that Defendants played any role in a bail determination relative to Plaintiff (which, presumably, was made by a neutral magistrate). Therefore, the claim in this regard fails as a matter of law.  See Dawkins v. Williams, 413 F. Supp.2d 161, 170-71 (N.D.N.Y. 2006)("Defendant officers . . .  were not responsible for the bail decisions made in relation to Plaintiff's detention or release.  Therefore, Plaintiff's Eighth Amendment claim fails.")(citations omitted).

Similarly, there is no evidence that Plaintiff was convicted of the crime of which Defendants were involved and, therefore, no Eighth Amendment "cruel and unusual punishment" claim attaches. See Smith v. Ortiz, 2006 WL 1458404, at *5 (S.D.N.Y. May 25, 2006)("A plaintiff may state a claim under the Eighth Amendment [for cruel and unusual punishment] only if he or she has been adjudged guilty by a criminal proceeding at the time of the events giving rise to the Eighth Amendment claim.")(citing SeeIngraham v. Wright, 430 U.S. 651, 671-72 (1977); City of Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983)).  Plaintiff's Eighth Amendment claim is **dismissed**.

### g.    First Amendment

Plaintiff contends that his First Amendment right to free speech was violated because Defendants failed to include in Plaintiff's written statement his assertion that "drugs were involved" in the incident.  Plaintiff's contention, even if true, does not constitute an actionable claim under the First Amendment.  There is no evidence of any action by the government that prevented Plaintiff from making the statement (or any statement for that matter), and the failure to include the contention in the written statement does not form the basis of an actionable First Amendment claim.

Further, Plaintiff's allegation is belied by the record.  As evidenced by the video of

Plaintiff's questioning, he was allowed to tell his version of events in narrative fashion.  He did not mention in the narrative that "drugs were involved."  After being given the statement and before signing it, Plaintiff was repeatedly asked whether he wanted to add anything.  He did not add this factual contention.

No reasonable fact finder could conclude that Plaintiff was prevented from making any statement.  Accordingly, any First Amendment claim asserted in this action is **dismissed.**

### h.    Ninth Amendment

Finally, Plaintiff asserts that Defendants' actions in denying him the right to counsel and coercing him make an incriminating statement constituted a violation of the Ninth Amendment.[5]  "The Ninth Amendment is a rule of construction, not one that protects any specific right, and so no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action."  Diaz v. City of New York, 2006 WL 3833164, **7-8 (E.D.N.Y. Dec. 29, 2006)(internal quotation marks and citations omitted).   Accordingly, any Ninth Amendment claim is **dismissed.**

---

[5]The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. Amend. IX.

22

**V.      CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED** and all **Section 1983 claims are DISMISSED**.  To the extent Plaintiff asserts a state common law claim of defamation, the Court declines to exercise supplemental jurisdiction over the claim and any such claim is **dismissed without prejudice to refiling in state court**.  The Clerk of the Court is directed to mark this file as closed.


**IT IS SO ORDERED**

DATED: January 16, 2008

Thomas J. McAvoy
Senior, U.S. District Judge

23